**UNITED STATES of America,**
**Plaintiff,**

v.

**Carl SIMON, Robert Kaiser and Melvin Fishman, Defendants-Appellees,**

and

**Harold Roth, Defendant.**

**Irving L. Wharton, Appellant.**

**No. 337, Docket 31012.**

United States Court of Appeals
Second Circuit.

Argued Feb. 7, 1967.

Decided March 3, 1967.

Certiorari Granted May 8, 1967.

See 87 S.Ct. 1485.

**650**

Marvin Schwartz, New York City (Thomas E. Patton, Sullivan & Cromwell, New York City, on the brief), for defendants-appellees.

Joseph J. Marcheso, New York City (Robert Giordano, Christy, Bauman, Frey & Christy, New York City, on the brief), for appellant.

Before LUMBARD, Chief Judge, and SMITH and FEINBERG, Circuit Judges.

LUMBARD, Chief Judge:

The question on this appeal is whether there is sufficient basis for an order entered by Judge Bryan in the Southern District of New York on December 16, 1966, enjoining Irving L. Wharton, trustee in the bankruptcy receivership of Continental Vending Machine Corporation in the Eastern District of New York, for a period of ninety days from taking the depositions in an action pending in the Eastern District since July 1965 of the three defendant-appellees, who are named in an indictment filed in the Southern District on October 17, 1966, which involves in part the same facts as the Eastern District action.

Judge Mishler, the Rule 2 judge in the Eastern District action,[1] had on October 24, 1966 denied an application made by the defendant-appellee Kaiser after the indictment was filed for a protective order under Fed.R.Civ.P. 30(b), staying his deposition on the ground that it was oppressive and violated his Fifth Amendment privilege against self-incrimination. Judge Mishler observed that Kaiser could assert his privilege in response to specific questions at the deposition. None of the appellees has invoked the privilege against self-incrimination at any point.

Although the indictment was returned in October 1966, no date has been set for the criminal trial in the Southern District. As appellees have made no showing that the taking of the depositions would interfere with the trial of the indictment or with the preparation of their defense in that trial, we reverse Judge Bryan's order.

It is conceded that the trustee is diligently pressing forward the preparation of the Eastern District action for trial, that he is seeking in good faith to take appellees' depositions for purposes of that action, and that the depositions are essential to his preparation for trial. An

---

1. General Rule 2(b) of the Eastern District provides in part:

    "The chief judge with the approval of his associate judges, upon his own motion or the motion of any party, may assign a long and complicated case to a judge for all purposes including the following: (1) to hear all motions and preliminary applications; (2) to conduct the pre-trial conference; and (3) to preside at the trial of the action."

involuntary petition for the reorganization of Continental Vending Machine Corporation under Chapter X of the Bankruptcy Act was granted by Judge Mishler in July 1963, and Irving L. Wharton was appointed and qualified as trustee.[2] On July 1, 1965, the trustee commenced a civil action in the Eastern District against the accounting firm of Lybrand, Ross Bros. & Montgomery, Harold Roth, the former president of Continental, and the Meadowbrook National Bank, seeking damages for an alleged conspiracy to despoil Continental's assets and to conceal the despoliation by means including the certification of false financial statements by Lybrand for the audit years 1958 through 1962, and for alleged negligence and recklessness of Lybrand and others in permitting the alleged despoliation. This action was consolidated with one brought in September 1964 against Roth, various officers and directors of Continental, and others (but not against Lybrand, pending settlement talks which later failed), and the consolidated actions were assigned to Judge Mishler as the Rule 2 judge for all purposes.

The trustee has expended substantial sums for legal and accounting fees in the discovery proceedings against Lybrand, which began shortly after July 1965. All Lybrand's books and records relating to the audit years in question have been made available to the trustee, and Lybrand personnel have been deposed, including the appellee Simon, the Lybrand partner in charge of the Continental engagement from 1960 to 1963, whose deposition is still open. The deposition of the appellee Kaiser, another Lybrand partner connected with the Continental engagement, had been scheduled to begin October 20, 1966 when the Southern District indictment was returned on October 17, 1966.

The indictment charged Roth and the appellees Simon, Kaiser, and Fishman in six counts with mail fraud, 62 Stat. 763 (1948), as amended, 18 U.S.C. § 1341, and conspiracy to commit mail fraud and to file a willfully false and misleading report with the Securities and Exchange Commission in violation of 48 Stat. 904 (1934), as amended, 15 U.S.C. § 78ff, 18 U.S.C. § 1001, by certifying, mailing, and filing a materially false and misleading balance sheet for Continental for the audit year 1962. All of the statements in Continental's 1962 balance sheet alleged by the indictment to be false and misleading would seem to be material to the trustee's actions, and at least two are specifically alleged in the trustee's July 1965 complaint.

After Judge Mishler had denied the appellee Kaiser's application for a protective order staying his deposition on October 24, 1966, Kaiser was deposed at two sessions on October 26 and 31, 1966. The appellees then moved before Judge Bryan on November 1, 1966 for an order enjoining the trustee from taking their depositions prior to the Southern District criminal trial. At the hearing of this motion on November 4, 1966, Judge Bryan issued a temporary restraining order pending its determination. On December 5, 1966, without application by the trustee, Judge Mishler directed Kaiser to appear for a continued deposition. This Court on December 8, 1966 stayed Judge Mishler's order until December 12, 1966, and after Judge Bryan's decision on December 12 further stayed Judge Mishler's order pending the expedited hearing and determination of any appeal from Judge Bryan's order of December 16, which appeal was later perfected and is now before us.

Judge Bryan held that he had the power to enjoin the trustee from taking the appellees' depositions both under the All Writs Act, 28 U.S.C. § 1651(a), and in exercise of the court's supervisory power over the administration of federal criminal justice. See, e. g., McNabb v. United

---

2. John P. Campbell, who had been appointed conservator of Continental's assets on complaint of the Securities and Exchange Commission by Judge Bonsal in the Southern District in April 1963, was appointed co-trustee with Wharton. Since Campbell's resignation in September 1964, Wharton has acted as sole trustee.

**652**

States, 318 U.S. 332, 340–341, 63 S.Ct. 608, 87 L.Ed. 819 (1943). He concluded that this power should be exercised because "it is reasonably likely that such unfairness will result as threatens the integrity of these criminal proceedings" if the prosecution is permitted to use appellees' deposition testimony when it could not under the Federal Rules of Criminal Procedure obtain criminal discovery against them. 262 F.Supp. 64 (S.D.N.Y. 1966).

■ Both holdings present questions of first impression. No federal district court in a criminal case has ever enjoined a party to a civil action in another jurisdiction from litigating the civil action or taking testimony in it, either under the All Writs Act, compare Steelman v. All Continent Corp., 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085 (1937) (injunction restraining action against trustee in bankruptcy), or under the supervisory power, which the Supreme Court has implemented by formulating rules for the conduct of criminal trials, e. g., Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966); McNabb v. United States, supra, or by enjoining the commission of acts by "federal law enforcement agencies." Rea v. United States, 350 U.S. 214, 217, 76 S.Ct. 292, 100 L.Ed. 233 (1956). We assume without deciding that the lower court had power to issue such an injunction, but we hold that it should not have done so, as there is no showing that the depositions sought by the trustee would interfere with the trial of the indictment or the appellees' preparation of their defense.

This appeal requires us to balance appellees' desire to prevent pretrial disclosure of their factual contentions to the prosecution in the Southern District criminal proceeding, without asserting their Fifth Amendment privileges against self-incrimination, against the interest of the trustee, representing numerous creditors and public security holders of Continental, in the expeditious progress of the Eastern District action. The trustee requires the appellees' deposition testimony to complete his preparation for

the trial of the Eastern District action, which must be resolved before the bankruptcy reorganization of Continental, already three and one-half years old, can be completed. It is conceded that the trustee seeks in good faith to depose appellees for purposes of the Eastern District action, and that there has been no consultation on lines of questioning between the trustee and the United States Attorney for the Southern District.

Under these circumstances, the public interest in the progress of the Eastern District action clearly outweighs the appellees' interest in withholding their testimony until after the Southern District trial without invoking their privileges against self-incrimination. It could hardly be contended, and appellees do not contend, that the prosecution in the Southern District could be enjoined from using the deposition testimony given by the appellee Simon before the Southern District indictment was returned. As long as appellees' preparation for the Southern District criminal trial is not hampered, we see no valid distinction in the fact that appellees' remaining depositions could not be scheduled until after the indictment was returned. In both cases, if appellees choose not to assert their privileges against self-incrimination, we see no reason why their testimony should be withheld from the trustee. The fact that additional testimony thereby becomes available to the government is merely the natural byproduct of another judicial proceeding; and to that extent it might be "discovery," but it is not discovery which the government has initiated or promoted for the purpose of circumventing the Federal Rules of Criminal Procedure or any constitutional right of the appellees. Indeed the constitutional rights of the appellees are unimpaired; here they are in suspension because the appellees have not chosen to avail themselves of their Fifth Amendment privileges.

■ It is true that appellees have testified in the trustee's depositions and before the grand jury that indicted them without asserting their privileges against

self-incrimination. Since, however, "it is well established that a waiver of the privilege in one proceeding does not affect the rights of a witness or the accused in another independent proceeding," United States v. Miranti, 253 F.2d 135, 139 (2 Cir. 1958); see 8 Wigmore, Evidence § 2276, at 470–72 (McNaughton rev. 1961), the appellees Kaiser and Fishman certainly, and Simon probably, could have interposed the privilege when the trustee sought to depose them after the indictment was returned.

■ Appellees urge that, as accountants, they "would lose their professional lives" by invoking the privilege. We are not sure that they would, if it were made clear that the privilege was claimed only on advice of counsel in order to prevent pretrial disclosure of their factual contentions. Whether or not they would, however, the same dilemma is faced by any witness in a civil or criminal trial who is himself under investigation or indictment for other crimes. Such a witness must either invoke his privilege against self-incrimination, or assume "the general duty to give what testimony one is capable of giving." See 8 Wigmore, Evidence § 2192 (McNaughton rev. 1961). It is for the same reason that a witness who has been given immunity from prosecution must testify although his testimony may expose him to such extralegal pressures as "loss of job, expulsion from labor unions, state registration and investigation statutes, passport eligibility, and general public opprobrium." Ullmann v. United States, 350 U.S. 422, 430, 76 S.Ct. 497, 502, 100 L.Ed. 511 (1955); see Piemonte v. United States, 367 U.S. 556, 81 S.Ct. 1720, 6 L. Ed.2d 1028 (1961). We cannot agree that "civilized standards of procedure and evidence," McNabb v. United States, supra, at 340, 63 S.Ct. at 612, require that a witness under indictment be given the option of nonappearance in any proceedings in related civil or criminal cases until his own trial is concluded.

■ We are also led to reverse Judge Bryan's order by the consideration that injunctions against prosecution of independent actions are fraught with possibilities of conflict between courts, which a court of appeals may not in other cases be in so happy a position to resolve as we are here. If this injunction were upheld, a like one might well be issued against the prosecution of an action in a district court outside this circuit, or even in a state court. Especially as a defendant called upon to depose in a civil case in a federal district court can move in that court under Fed.R.Civ.P. 30(b) to stay or limit the deposition, the district court in which the criminal case is pending should enjoin the taking of such a deposition only in exceptional circumstances. As we have held, no such circumstances are present here.

Judge Bryan relied heavily upon two lines of cases in which "it has been consistently held that where both civil and criminal proceedings arise out of the same or related transactions an objecting party is generally entitled to a stay of discovery in the civil action until disposition of the criminal matter * * * whether the defendant in the criminal case seeks to use the civil rules to obtain disclosure of the Government's evidence," citing, for example, Campbell v. Eastland, 307 F.2d 478 (5 Cir. 1962), cert. denied, 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963), "or whether the Government seeks a similar advantage to secure evidence not otherwise available to the prosecution," citing Perry v. McGuire, 36 F.R.D. 272 (S.D.N.Y.1964), Paul Harrigan & Sons, Inc. v. Enterprise Animal Oil Co., Inc., 14 F.R.D. 333 (E.D.Pa. 1953), and National Discount Corp. v. Holzbaugh, 13 F.R.D. 236 (E.D.Mich. 1952). 262 F.Supp. at 74.

Both lines of cases seem to us to be inapposite. Cases where the criminal defendant seeks disclosure of the government's evidence, or the government seeks disclosure of the defendant's, are distinguishable because here the trustee, who seeks to depose appellees, is pursuing an independent action on behalf of Continental's creditors and security holders, which was commenced more than one

year before the indictment was found. And the cases in the second line appear to us, as they did to Judge Mishler in his opinion of October 24, 1966, to rest upon the deponent's assertion of his privilege against self-incrimination; to the extent that they do not, we decline to follow them. In both National Discount Corp. v. Holzbaugh, supra, and Paul Harrigan & Sons, Inc. v. Enterprise Animal Oil Inc., supra, the deponents explicitly asserted their privileges against self-incrimination, and the court in Perry v. McGuire, supra, cited both cases in holding that interrogatories directed to a criminal defendant "would be oppressive and would infringe on his constitutional rights." 36 F.R.D. at 273. Moreover, all three cases arose on Rule 30(b) motions made in the court in which the civil action was pending; none is a precedent for the injunction Judge Bryan issued.

■ Of course, if the district court should find that the taking of the depositions of the appellees threatens to interfere with the trial of the indictment or with such preparation of their defenses by the appellees, as may be necessary, the district court has the power to take appropriate action.

Reversed. The mandate shall go down forthwith.

FEINBERG, Circuit Judge (dissenting):

I dissent.

I would have affirmed on the basis of Judge Bryan's thorough opinion in the trial court. The next best thing to do is to dissent on the basis of that opinion, which is reported at 262 F.Supp. 64. It should be read in conjunction with the majority opinion because Judge Bryan clearly and convincingly states the reasons for the ninety-day injunction under attack. I adopt his basic reasoning and add only a few thoughts addressed to the majority opinion.

Since the district court's power to enjoin is assumed, the issue is one of discretion. The majority largely ignores the basic reason given by the district judge for his exercise of that discretion—

that otherwise the criminal trial of these defendants will be fundamentally unfair. If the trial court by order allowed the Government full discovery in the criminal case and denied it to defendants, all would agree that this would be basically unfair. Yet that is what may well happen because of this reversal. The absence of collusion between the trustee in the civil suit and the Government in the criminal suit is not controlling; the effect of the discovery on defendants in the criminal case is. The majority can see no distinction between use of depositions taken before and after the criminal indictment. To me the distinction is clear. Once the indictment was filed, the court in which those charges were to be tried had the duty to keep the criminal proceedings fair. In the absence of such proceedings, there was, of course, no correlative duty.

In addition, even if I had doubts about the correctness of the trial court's action—and I do not—the reversal is totally uncalled for. The injunction by its terms expires in about two weeks. I see no adequate reason why the conflicting interests cannot be again left to the discretion of the district judge on March 17. At that time, he will be able to appraise the situation again in the light of circumstances then existing. For example, he can consider whether the criminal trial is being unduly delayed by defendants Simon, Kaiser and Fisher, whether they will adhere to the assurance given on oral argument of preparing for a trial date in May, whether a Rule 2 judge has been appointed to expedite that trial, whether it is now true (as apparently it was not on the record before Judge Bryan) that the trustee has no other meaningful depositions to take, and whether, if there is going to be significant delay, it might be practical to allow depositions with appropriate prohibitions on use of them by the Government.

In other words, I think the district judge was right, and, in any event, would allow him to exercise his discretion again on March 17 when the injunction expires. Cf. Nederlandse Erts-Tankersmaatschappij, N. V. v. Isbrandtsen Co., 362 F.2d 205 (2d Cir. 1966).